UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

UNITED STATES OF AMERICA,

-against-

EDGAR GOMEZ-QUILES,

Defendant.

---------------------------------------------------------- X

26 Crim. 10 (LGS)

**OPINION & ORDER**

LORNA G. SCHOFIELD, District Judge, sitting by designation:

On October 7, 2025, a criminal complaint (the "Complaint") charged Defendant Edgar Gomez-Quiles with alien transportation in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), an offense carrying no mandatory minimum sentence. Defendant attempted to negotiate a resolution of the case, but the Government rejected his plea offer on the existing charge and maintained that he instead would have to admit to alien smuggling, an offense carrying a three-year mandatory minimum sentence. After declining to do so, on January 14, 2026, Defendant was indicted on one count of alien smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) (the "Indictment").

Defendant now moves to dismiss the Indictment with prejudice based on the involvement of John A. Sarcone III in Defendant's prosecution. In the alternative, Defendant seeks (1) disqualification of Mr. Sarcone from any further participation in the case, (2) dismissal of the Indictment without prejudice, (3) invalidation of the rejections of Defendant's negotiation efforts and an independent review to determine the appropriate resolution of the case and (4) if the Indictment is not dismissed on the present record, discovery concerning Mr. Sarcone's involvement in the decisions to charge Defendant and reject Defendant's negotiation efforts.

For the below reasons, Defendant's motion is denied insofar as it seeks (1) dismissal of the Indictment or discovery concerning Mr. Sarcone's involvement in the decision to charge

Defendant and (2) invalidation of the rejections of Defendant's negotiation efforts or discovery concerning Mr. Sarcone's involvement in those rejections. Decision is reserved on Defendant's request for Mr. Sarcone's disqualification from future participation in the case pending the supplemental submission set forth below.

## I. BACKGROUND

### A. Mr. Sarcone's Appointment and the *Grand Jury Subpoenas* Proceedings

The last Senate-confirmed U.S. Attorney for the Northern District of New York ("NDNY"), Carla Freedman, resigned on February 17, 2025. Upon her resignation, First Assistant U.S. Attorney ("FAUSA") Daniel Hanlon began serving as Acting U.S. Attorney pursuant to the automatic succession provision of the Federal Vacancies Reform Act ("FVRA"), which provides that upon a vacancy in the office of U.S. Attorney, the "first assistant" to the office "shall perform the functions and duties of the office temporarily in an acting capacity." *See* 5 U.S.C. § 3345(a)(1).

Shortly thereafter, then-Attorney General Pamela Bondi appointed Mr. Sarcone as Interim U.S. Attorney for the NDNY pursuant to 28 U.S.C. § 546, the only statutory mechanism other than the FVRA for temporarily filling a vacancy in the office of U.S. Attorney. Mr. Sarcone began serving in that role on March 17, 2025. Under the statute, Mr. Sarcone's interim appointment would expire at the earlier of (1) 120 days or (2) the appointment of a U.S. Attorney under 28 U.S.C. § 541, which requires nomination by the President and confirmation by the Senate. *See* 28 U.S.C. § 546(c). The President never formally nominated Mr. Sarcone -- or anyone else -- as U.S. Attorney. Accordingly, the Senate did not confirm a nominee before Mr. Sarcone's interim appointment expired.

Under § 546, if no successor is in place when the Attorney General's 120-day appointment ends, the district court for the relevant district may appoint a U.S. Attorney to serve until the vacancy is filled by a Senate-confirmed appointee. *See id.* § 546(d). On July 14, 2025, shortly before the expiration of Mr. Sarcone's interim term, the Board of Judges for the NDNY declined to exercise its authority under § 546(d) to appoint a U.S. Attorney. The same day, the Department of Justice took a series of personnel actions. First, it reassigned Mr. Hanlon from FAUSA to Deputy U.S. Attorney, creating a vacancy in the FAUSA role. Second, it designated Mr. Sarcone as FAUSA for a period of one year. Third, it appointed Mr. Sarcone as a Special Attorney pursuant to 28 U.S.C. § 515 for an indefinite term. The Special Attorney appointment letter, which was from the Executive Office for United States Attorneys, stated that Mr. Sarcone was "authorized to conduct in the [NDNY], any kind of legal proceedings, civil or criminal, . . . which United States Attorneys are authorized to conduct." Also on July 14, 2025, Mr. Sarcone sent a letter to the Chief Judge of the NDNY stating that, based on these actions and by operation of the FVRA, he was "now serving as Acting United States Attorney for the [NDNY] indefinitely."

Mr. Sarcone's authority to serve as Acting U.S. Attorney was subsequently challenged in connection with two grand jury subpoenas issued to the Office of the New York State Attorney General ("NYOAG"). On August 5, 2025, Mr. Sarcone personally requested issuance of the subpoenas in connection with federal criminal investigations concerning two civil enforcement actions brought by NYOAG. Both subpoenas identified "Acting United States Attorney" Sarcone as the federal prosecutor requesting the subpoena and did not name any other prosecutors. NYOAG moved to quash the subpoenas, arguing in relevant part that Mr. Sarcone

was not lawfully serving as Acting U.S. Attorney and that the subpoenas were unenforceable as a result.

While NYOAG's motion was pending, on October 8, 2025, the Attorney General issued an order ratifying Mr. Sarcone's appointment as Special Attorney and designation as FAUSA pursuant to her general delegation authority under 28 U.S.C. §§ 509, 510 and 515. The order further stated that, as FAUSA, Mr. Sarcone had authority to serve as Acting U.S. Attorney during the vacancy in the office of U.S. Attorney, subject to the conditions and time limits of the FVRA.

On January 8, 2026, the undersigned, sitting by designation, granted NYOAG's motion to quash. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 288 (N.D.N.Y. 2026) (the "Grand Jury Subpoenas Order"). The Grand Jury Subpoenas Order held that, contrary to the Government's contention, Mr. Sarcone was not lawfully serving as Acting U.S. Attorney pursuant to the automatic succession provision of the FVRA because he was not FAUSA at the time the vacancy in the office of U.S. Attorney first arose. *Id.* at 294-97. The Grand Jury Subpoenas Order also rejected the Government's alternative argument that Mr. Sarcone was authorized to issue the subpoenas through his delegated authority as Special Attorney and FAUSA, concluding that the Attorney General could not use general delegation to vest Mr. Sarcone with the full authority of the U.S. Attorney outside the FVRA's exclusive vacancy-filling procedures. *Id.* at 297-98. The Grand Jury Subpoenas Order found problematic the purported authorization of Mr. Sarcone to "conduct any proceedings that U.S. Attorneys may conduct -- the full range of the office's powers." *Id.* at 298. The Grand Jury Subpoenas Order quashed the subpoenas and disqualified Mr. Sarcone from further involvement in the investigations underlying them. *Id.* at 298-300.

The Government appealed, and on August 21, 2026, the Second Circuit affirmed. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.* (*Grand Jury Subpoenas*), 188 F.4th 595, 598 (2d Cir. 2026), *petition for cert. filed*, No. 26-348 (U.S. Sep. 15, 2026). The Second Circuit agreed that Mr. Sarcone was not validly serving as Acting U.S. Attorney when he obtained the subpoenas because the FVRA permits only the FAUSA in place at the time the vacancy arises to become Acting U.S. Attorney automatically. *Id.* at 610. The Circuit also rejected the Government's alternative argument that the Attorney General's delegation of authority independently authorized Mr. Sarcone to issue the subpoenas, holding that the Attorney General could not circumvent the FVRA by delegating to Mr. Sarcone all of the functions and duties of the vacant U.S. Attorney position, leaving him "indistinguishable from an *acting officer*."[1] *Id.* at 610-13. The Second Circuit affirmed both the decision to quash the subpoenas and the decision to disqualify Mr. Sarcone from further participation in the underlying investigations, finding that the Government had forfeited its challenge to the latter issue. *Id.* at 613-15.

**B. Defendant's Prosecution and Negotiation Efforts**

The following facts are from the Complaint, the Indictment or Defendant's submissions on the instant motion, unless otherwise noted. Defendant was arrested on October 4, 2025. The Complaint charged Defendant with alien transportation in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), an offense carrying no mandatory minimum sentence. The Complaint was signed by a U.S. Border Patrol Agent. Defendant was released pending a detention hearing on October 14, 2025, after which he was released on pretrial supervision.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

In late 2025, defense counsel at the Office of the Federal Public Defender for the NDNY ("FPD") engaged in plea discussions with the Assistant United States Attorney ("AUSA") assigned to the case. On December 3, 2025, defense counsel confirmed to the AUSA that Defendant was willing to plead guilty to the charged transportation offense. The parties had previously discussed the possibility that Defendant could be charged with a more serious smuggling offense carrying a mandatory minimum sentence. Defense counsel sought confirmation that the transportation offense would be the charge in the potential plea agreement. The AUSA responded that Defendant "could only resolve his exposure" by pleading guilty to a smuggling charge under 8 U.S.C. § 1324(a)(2)(B)(ii), which carries a three-year mandatory minimum sentence. Defense counsel found this position "odd" and "contrary to [his] prior experience," because prior to Mr. Sarcone's arrival to the U.S. Attorney's Office ("USAO") for the NDNY, "similar or comparable cases would be resolved with an offer to plead guilty to a transportation offense." Defendant informed the NDNY USAO that he did not wish to plead guilty to the smuggling offense.

On January 14, 2026, a federal grand jury returned the Indictment charging Defendant with one count of alien smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). The names in the signature block at the end of the Indictment are Todd Blanche as "Deputy Attorney General" and Mr. Sarcone as "Acting United States Attorney," "By: [signature of] Nicholas Walter[,] Assistant United States Attorney." Only Mr. Walter signed the Indictment. Since February 2026, Mr. Sarcone has referred to himself as FAUSA, rather than Acting U.S. Attorney, of the NDNY. On September 18, 2026, the FPD filed the instant motion after filing substantially similar

motions in the NDNY cases *United States v. Dunlap*, No. 25 Crim. 302, and *United States v. Guillen*, No. 26 Crim. 226.[2]

## II. DISCUSSION

### A. Dismissal of the Indictment

Defendant moves to dismiss the Indictment on the basis that Mr. Sarcone was unlawfully serving as Acting U.S. Attorney both when Defendant was charged in October 2025 and when Defendant was indicted in January 2026. Defendant argues that, although an AUSA signed the Indictment, Mr. Sarcone unlawfully exercised the authority of the U.S. Attorney in directing and overseeing Defendant's prosecution. Defendant alternatively seeks discovery regarding Mr. Sarcone's involvement in the decision to charge Defendant. Neither form of relief is warranted. The Indictment was proper because it was signed by a duly authorized AUSA, regardless of Mr. Sarcone's status.

The statutory scheme supports the conclusion that an AUSA's prosecutorial authority does not depend on the lawful service of the individual heading the relevant USAO. Congress authorized the Attorney General to appoint and remove AUSAs, *see* 28 U.S.C. § 542, and vested the Attorney General with authority over the conduct and supervision of litigation involving the United States, including the direction of AUSAs, *see id.* §§ 516, 519. "AUSAs are themselves representatives of the government. Because they are appointed directly by the Attorney General, their ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party." *United States v. Hilario*, 218 F.3d 19, 22 (1st Cir. 2000) (holding that the court had jurisdiction

[2] Opinions substantially similar to the instant Opinion & Order were issued in those cases. *See United States v. Dunlap*, No. 25 Crim. 302, 2026 WL 3181449, at *1 (N.D.N.Y. Oct. 23, 2026); *United States v. Guillen*, No. 26 Crim. 226, 2026 WL 3216954, at *1 (N.D.N.Y. Oct. 27, 2026).

even if the notice of appeal was signed by an improperly appointed U.S. Attorney); *see United States v. Baldwin*, 541 F. Supp. 2d 1184, 1214 (D.N.M. 2008) (finding indictment valid regardless of whether U.S. Attorney's appointment was constitutional); *cf. United States v. Suescun*, 237 F.3d 1284, 1287-88 (11th Cir. 2001) (declining to vacate conviction after trial conducted by AUSA acting under supervision of allegedly unconstitutionally appointed U.S. Attorney).

The Federal Rules of Criminal Procedure ("Rules") expressly recognize an authorized AUSA as an "attorney for the government" who may appear before a grand jury and sign an indictment. An indictment must be signed by "an attorney for the government," Fed. R. Crim. P. 7(c)(1), and an authorized AUSA falls expressly within that definition, *see id.* 1(b)(1)(B). In *United States v. Gantt*, the Ninth Circuit explained that an infirmity in the appointment of the U.S. Attorney would not invalidate an indictment because Rule 7(c)(1) requires only the signature of an "attorney for the government." 194 F.3d 987, 998 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc); *accord United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) (holding that, "[e]ven assuming that [the U.S. Attorney]'s appointment is unconstitutional, Defendant's remedy would not be the dismissal of his indictment" because "the rules specifically provide that a criminal indictment signed by an [AUSA] is valid").

Recent decisions addressing challenges to purported Acting or Interim U.S. Attorneys have overwhelmingly applied these principles and declined to invalidate indictments signed by authorized AUSAs, even after finding that the purported U.S. Attorney was serving unlawfully. *See United States v. Garcia*, No. 25 Crim. 227, 2025 WL 2784640, at *15-16 (D. Nev. Sep. 30, 2025), *aff'd on other grounds*, *United States v. Jackson*, 187 F.4th 1198 (9th Cir. 2026), *petition*

*for cert. filed*, No. 26-304 (U.S. Sep. 8, 2026); *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1106-09 (C.D. Cal.), *reconsideration denied*, 812 F. Supp. 3d 1011 (C.D. Cal. 2025), *renewed motions granted in part and denied in part*, No. 25 Crim. 264, 2026 WL 3223483 (C.D. Cal. Oct. 27, 2026); *United States v. Ramirez-Martinez*, No. 22 Crim. 1721, 2026 WL 113431, at *21-23 (D.N.M. Jan. 14, 2026); *United States v. Ndissi*, No. 25 Crim. 143, 2026 WL 318836, at *4-6 (D. Vt. Feb. 5, 2026); *see also United States v. Dillard*, No. 24 Crim. 47, 2026 WL 560356, at *4-7 (E.D. Va. Feb. 27, 2026) (addressing the issue although defendant did not move to dismiss indictment or otherwise challenge Interim U.S. Attorney's appointment or authority). *But see United States v. Naviwala*, 825 F. Supp. 3d 451, 527-29 (D.N.J.) (questioning whether to dismiss indictment signed by duly authorized AUSAs while unauthorized U.S. Attorney headed the office, though question was mooted by subsequent appointment of new U.S. Attorney and filing of superseding indictment at No. 24 Crim. 378, Dkt. No. 128), *reconsideration denied*, No. 24 Crim. 99, 2026 WL 1031149 (D.N.J. Apr. 16), *appeal dismissed for lack of appellate jurisdiction*, No. 26-1896, 2026 WL 3094070 (3d Cir. Oct. 7, 2026). Those courts have concluded that the absence of a lawfully serving U.S. Attorney does not strip otherwise-authorized AUSAs of their authority -- derived directly from the Attorney General -- to prosecute cases on behalf of the United States.

That conclusion resolves Defendant's challenge to the Indictment. Mr. Sarcone did not sign the Indictment. AUSA Walter did on behalf of the Deputy Attorney General and Mr. Sarcone. Defendant does not challenge the legality of Mr. Walter's signature or his authority to sign. Additionally, Defendant does not argue, and there is no indication, that any role Mr. Sarcone might have had in approving or obtaining the Indictment prejudiced the grand jury process. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (holding that

dismissal of indictment for nonconstitutional error "is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations"); *Ramirez*, 807 F. Supp. 3d at 1108 (declining to dismiss indictment where "nothing indicates that any presumed role [the unlawfully serving Acting U.S. Attorney] might have had in approving the indictments prejudiced the grand jury process"). Defendant's motion to dismiss the Indictment on the basis of Mr. Sarcone's unlawful service as Acting U.S. Attorney is denied.

Defendant argues that, even if Mr. Sarcone did not sign the Indictment, "his proverbial fingerprints are all over it," and that his participation in the decision to seek the Indictment amounts to "outrageous government conduct" warranting the Indictment's dismissal. Defendant's claim regarding Mr. Sarcone's involvement is speculative, but, even if true, Mr. Sarcone's participation would not change the outcome. This case differs from *Grand Jury Subpoenas*, in which Mr. Sarcone personally requested the subpoenas, invoked his purported authority as Acting U.S. Attorney in doing so and did not identify any other independently authorized prosecutor as responsible for the subpoenas. *See* 188 F.4th at 601. The premise of the authorities discussed above is that an AUSA's prosecutorial authority exists independently of the U.S. Attorney. Even assuming that Mr. Sarcone participated in internal discussions regarding the Indictment, such participation did not deprive the AUSAs who signed the Indictment and have been prosecuting the case of their independent authority to do so.

Practical considerations reinforce this conclusion. A contrary rule would make the validity of an indictment signed by an authorized AUSA turn on who participated in internal charging decisions. Nothing in the statutory scheme suggests that Congress intended such a result. *Cf. Ruiz Rijo*, 87 F. Supp. 2d at 71-72 & n.2 (noting that "practical, as opposed to

technical, considerations decide the validity of an indictment" and concluding that invalidating indictments based on an infirmity in the U.S. Attorney's appointment would "handcuff[] federal prosecutors in [the district], in effect rendering them impotent").

Defendant's motion for dismissal of the Indictment is denied, and the request for discovery concerning Mr. Sarcone's involvement in the decision to charge Defendant is denied as moot.

**B. Disqualification of Mr. Sarcone**

Defendant moves to disqualify Mr. Sarcone from any further participation in this case. Decision is reserved on this request pending the supplemental production ordered below.

The Second Circuit held that Mr. Sarcone was not lawfully serving as Acting U.S. Attorney under the FVRA and that the Attorney General could not circumvent the FVRA by delegating all of the duties of the U.S. Attorney to Mr. Sarcone. *Grand Jury Subpoenas*, 188 F.4th at 610-13. The Circuit reasoned that the FVRA's exclusivity requirement turns on function rather than form, *see id.* at 610, and therefore prohibits a delegation "so comprehensive that its recipient functionally occupies the vacant office," *id.* at 613. The Circuit concluded that the Attorney General's delegation to Mr. Sarcone violated this rule because the delegation was "exhaustive of the [U.S. Attorney]'s functions and duties" and "left him indistinguishable from an *acting officer*." *Id.* at 611.

*Grand Jury Subpoenas* establishes that Mr. Sarcone may not purport to act as the U.S. Attorney or exercise authority so comprehensive that he functionally occupies that vacant office.[3]

[3] The Ninth Circuit's recent decision in *Jackson* is in accord with the Second Circuit's conclusion. *See* 187 F.4th at 1215-16 ("[T]he Attorney General's authority to delegate does not permit him to vest all of the functions and duties of a vacant office in a single person."); *see also* *Ramirez*, 2026 WL 3223483, at *3-4, *6-10 (in light of *Jackson*, disqualifying individual

But neither that decision nor the FVRA precludes Mr. Sarcone from exercising any authority whatsoever -- including the ability to participate in prosecutions -- in a separately authorized capacity, including as Special Attorney or FAUSA. *Grand Jury Subpoenas* contemplated that, under different circumstances, Mr. Sarcone "might then have obtained or might still obtain the subpoenas in his capacity as Special Attorney and FAUSA" if he were granted "a narrow delegation to conduct the specific investigations involved in [a] case, rather than . . . all the duties of the U.S. Attorney's office." *See id.* at 614.

In July 2025, Mr. Sarcone was appointed Special Attorney indefinitely and designated FAUSA for one year. The Attorney General later issued an order "ratify[ing]" these actions. The Government represents that Mr. Sarcone is still FAUSA. The present record, however, is unclear as to whether Mr. Sarcone is currently validly serving as either Special Attorney or FAUSA. As to the Special Attorney title, the Second Circuit has found impermissible the "sweeping delegation" of authority contained in Mr. Sarcone's July 2025 appointment letter, which authorized him to conduct in the NDNY "any kind of legal proceedings . . . which United States Attorneys are authorized to conduct." *See Grand Jury Subpoenas*, 188 F.4th at 610-11. The Government does not argue, and the present record does not indicate, that this delegation was subsequently revised or that Mr. Sarcone was reappointed as Special Attorney under different terms.

As to the FAUSA title, the Executive Office for United States Attorneys designated Mr. Sarcone as FAUSA for a period of one year, effective July 15, 2025. A one-year designation would have ended on July 15, 2026. While the Government has represented after July 15, 2026,

---

purporting to serve as Special Attorney and FAUSA where revised designation order continued to "attempt to assign [the individual] all the functions and duties of the U.S. Attorney" and "exclude[d] only powers that are necessarily excluded by law").

that Mr. Sarcone is still FAUSA, the Government does not argue, and the present record does not indicate, that Mr. Sarcone's designation as FAUSA extended or was renewed beyond that date. The present record also does not indicate the scope of any updated FAUSA designation or whether it is the kind of comprehensive designation rejected by the Second Circuit and other courts.

Accordingly, by **November 6, 2026**, the Government shall produce documents and, if additional statements are necessary, a declaration based on knowledge sufficient to identify the basis for (1) Mr. Sarcone's current authority to serve as Special Attorney and/or FAUSA of the NDNY or (2) any other authority supporting Mr. Sarcone's continued participation in Defendant's prosecution. The decision on Defendant's request to disqualify Mr. Sarcone is reserved pending that production.

### C. Invalidation of Rejected Negotiation Efforts

Defendant moves for the invalidation of the rejections of his negotiation efforts. He argues that Mr. Sarcone was unlawfully serving as Acting U.S. Attorney at the time Defendant's plea offers were rejected and therefore lacked the authority to make those decisions. This request is denied because there is no evidence that Mr. Sarcone played any role in the negotiation decisions.

According to Defendant's own representations, it was the assigned AUSA -- not Mr. Sarcone -- who engaged in plea discussions with defense counsel and communicated the Government's position that Defendant would have to admit to a smuggling charge to resolve the case. While Defendant surmises that Mr. Sarcone must have influenced this decision because the NDNY USAO would not have taken such an approach prior to Mr. Sarcone's arrival, Defendant

points to no support for this assertion beyond defense counsel's speculation and has not otherwise shown that Mr. Sarcone played any role in the negotiations in this case.

Defendant's motion for the invalidation of the rejected negotiation efforts and an independent review to determine the appropriate resolution of the case is denied, and the request for discovery concerning Mr. Sarcone's involvement in the decision to reject Defendant's offers is denied as moot.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED** insofar as it seeks (1) dismissal of the Indictment or discovery concerning Mr. Sarcone's involvement in the decision to charge Defendant and (2) invalidation of the rejections of Defendant's negotiation efforts or discovery concerning Mr. Sarcone's involvement in those rejections. Decision is reserved on Defendant's request for Mr. Sarcone's disqualification from future participation in the case.

By **November 6, 2026**, the Government shall serve on Defendant and file on the public docket documents and, if additional statements are necessary, a declaration based on knowledge sufficient to identify the basis for (i) Mr. Sarcone's current authority to serve as Special Attorney and/or FAUSA of the NDNY or (ii) any other authority supporting Mr. Sarcone's continued participation in Defendant's prosecution.

Dated: October 30, 2026
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**